FILED
FEB 26 2025
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

KRISTINA GREEN (NYBN 5226204)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6912
FAX: (415) 436-7234
Kristina.Green@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>YOHANNES TEKIE GEBREZGHI,<br>Defendant. | CASE NO. 3:25-MJ-70198 MAG<br><br>UNITED STATES' MOTION FOR DETENTION |

## I. INTRODUCTION

The United States, by and through its counsel, Assistant United States Attorney Kristina Green, agrees with Pretrial Services' recommendation for detention in this case, and hereby requests that the Court detain the defendant, Yohannes Tekie Gebrezghi ("Gebrezghi" or the "defendant"), based on the danger he poses to the community and risk of flight. Gebrezghi was previously convicted in this district of being a felon in possession of a firearm and unlawful trafficking of firearms. *See* 11-CR-112 SI. The Honorable Susan Illston sentenced Gebrezghi to 151 months in custody and three years supervised release in July 2011. This sentence did not deter Gebrezghi from resuming his criminal lifestyle. In April 2023, Gebrezghi moved for early termination of his supervised release claiming that supervised release was preventing him from being able to travel out of state to assist with his family trucking

business. *See* 11-CR-112, ECF No. 68. Judge Illston granted Gebrezghi's request and terminated supervision in June 2023. 11-CR-112, ECF No. 73. Gebrezghi perpetrated a fraud upon the Court, violating its trust. Gebrezghi sought to terminate his supervised release not so he could dedicate himself to his family trucking business, but so he could return to illegally possessing and trafficking firearms away from the watchful eye of Probation. Within three months of his supervision being terminated, in September 2023, law enforcement officers conducting a traffic stop found thirteen firearms concealed within a vehicle that Gebrezghi was driving in Mississippi. On December 4, 2011, Gebrezghi was indicted on three firearm-related charges in the Northern District of Mississippi.

The nature and circumstances of the charged offense, Gebrezghi's extensive criminal history, the weight of the evidence against him, and his questionable ties to the community, warrant detention. There are no conditions of release that would reasonably assure the safety of the community or Gebrezghi's appearance in the Northern District of Mississippi.

## II. LEGAL STANDARDS

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Motamedi*, 767 F.2d at 1406.

The Court must consider four factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's

release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986). "[T]he Bail Reform Act mandates an [1] individualized evaluation [2] guided by the factors articulated in § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Categorical grants or denials of bail, not tethered to an individualized determination, are impermissible. *Id.* Consideration of factors outside the articulated factors set forth in Section 3142 is also disfavored. *Id.*

## III. ARGUMENT

### A. The Nature and Circumstances of the Instant Offense

On September 26, 2023, law enforcement officers conducted a traffic stop on Gebrezghi while he was driving in Mississippi, on his way from North Carolina to California. The vehicle was rented in Gebrezghi's sister's name, S.G. Gebrezghi was accompanied by a passenger in the vehicle, U.V.R. Gebrezghi and U.V.R. provided inconsistent answers as to the purpose and length of their trip. For example, Gebrezghi informed officers that they hard been in North Carolina because U.V.R. had a business meeting and they had been there for about a day; whereas U.V.R. told officers that the purpose of the trip was to visit sites and that they had been there for a couple of days. Gebrezghi stated that he had marijuana in the vehicle, which the officers could also smell. When asked if he had anything illegal in the vehicle, Gebrezghi replied in the negative.

Officers found thirteen firearms, some of which were loaded with ammunition, gun magazines, and two hand-held radios concealed within the door panels of the vehicle. Officers also found $16,620 in cash concealed within black socks that were hidden under a panel around the gear shift, and five cell phones. Prior to the search, when officers had asked Gebrezghi if he had large amounts of money, he had informed them that he had only about $800.

A picture of some of the firearms found within the vehicle is provided below:



A picture of the cash found in the vehicle is provided below:



Agents searched Gebrezghi's phones pursuant to a federal search warrant and found additional evidence indicating that Gebrezghi was illegally trafficking firearms. For example, agents found two photos of firearms, one of which showed an array of firearms very similar to those found in Gebrezghi's vehicle, the other showed an array of firearms with dollar signs drawn over them. These pictures are provided below:





On December 4, 2024, a grand jury in the Northern District of Mississippi returned an indictment charging Gebrezghi with three counts: (1) felon in possession of firearms; (2) travel between states and acquiring or attempting to acquire firearms in furtherance of unlawful dealing in firearms between August and September 2023; and (3) trafficking in firearms for the same time period.

The danger Gebrezghi poses to the community is readily apparent from this incident. Either Gebrezghi planned to use these weapons himself, or he was possessing these firearms as part of his illegal firearm trafficking activities, a form of latent violence. Whether used directly by Gebrezghi or by

whomever Gebrezghi sold these firearms to, this number of firearms could wreak havoc on a community and expose numerous victims to life-threatening danger. This offense is particularly egregious when considered in light of the fact that Gebrezghi had recently completed a lengthy sentence for this exact same type of activity and had moved the Court for early termination of supervised release just a few months earlier.

The circumstances of Gebrezghi's arrest are also of note. On January 31, 2025, Gebrezghi traveled the wrong way through a tunnel in the Marin Headlands and almost collided with a police vehicle. Officers became aware of the federal warrant when they ran a records check during the ensuing traffic stop. When officers approached the vehicle, they smelt marijuana emanating from it. A search of the vehicle revealed 16.5 grams of raw marijuana, a pair of black metal knuckles, and a pocket knife. Gebrezghi's daughter was a passenger in the car during this incident.

**B. The History and Characteristics of Gebrezghi**

Gebrezghi has an extensive criminal history, replete with firearm and drug trafficking offenses. The most significant of his prior convictions is his federal conviction for felon in possession and unlawful trafficking of firearms, for which he received a sentence of 151 months imprisonment from Judge Illston. All of Gebrezghi's prior criminal conduct occurred while he was on some type of court supervision. *See* 11-CR-112, ECF No. 15 (Gov. Sentencing Memo); PSR ¶ 64. In addition, Gebrezghi was previously a member of the Crips criminal street gang, but the Pretrial report indicates that he may no longer be a validated member of the gang. *See* PSR ¶¶ 62, 66. The government calculates that Gebrezghi's criminal history places him in Criminal History Category VI.

Gebrezghi has the following criminal convictions: (1) robbery (2002); (2) driving with a suspended license (2004); (3) obstructing public officers (2004); (4) possession of marijuana for sale (2004); (5) possession or purchase of narcotics for sale (2005); (6) possession of illegal substance in jail (2007); (7) felon in possession of firearm and possession of marijuana for sale (2010); (8) felon in possession of a firearm and unlawful trafficking of firearms (2010) (prior federal conviction); and (9) possession of a controlled substance in prison (2018). Additional details related to some of these offenses are provided below:

a) 2002 Robbery

The defendant was in a vehicle when he pulled up to the roller-blading victim and said, "You have five seconds to give me all your money." PSR at ¶ 56. Fearing for his life, the victim gave the defendant the six dollars in his pockets. *Id.* The defendant later told other people that he had robbed the victim. *Id.*

b) 2004 Obstruction of Officers Pursuing Armed Crip Gang Member

While officers were pursuing a "West 9 Street gangster Crip" gang member who was armed with a handgun and a shotgun, the defendant obstructed the officers by telling them the suspect was not in his apartment. PSR at ¶ 59. After obtaining permission to enter from the defendant's mother, the officers found the Crip gang member in the defendant's apartment. *Id.*

c) 2005 Drug Trafficking While Armed with Firearm

The defendant was pulled over for a traffic violation and found to be in possession of a loaded 40-caliber handgun under his seat with the handle facing forward. PSR at ¶ 60. The gun had been reported stolen out of Sacramento. *Id.* The officer also found a duffle bag containing a knit cap/ski mask, ziplock bags, marijuana, and a digital scale. *Id.*

d) 2006 Drug Trafficking While Armed with Firearm

Four months after being sentenced for his prior drug trafficking conviction, the defendant was again pulled over for a traffic offense and found to be in possession of 28.5 grams of cocaine, a 9 millimeter pistol, and a juvenile passenger. PSR at ¶ 61. Similar to his first drug trafficking conviction, the firearm he had with him was once again loaded, and this one had the serial number scratched off. *Id.*

e) 2007 Possession of Methamphetamine in Prison

During a search in prison, the defendant was found to have 14 bindles of methamphetamine in his buttocks area. PSR at ¶ 62. The officer concluded that the methamphetamine was intended to be distributed. *Id.* Paragraph 81 of the PSR confirms that the defendant experimented with methamphetamine when he was 18 years of age, but has never regularly used it. PSR ¶81.

f) 2010 Felon in Possession of Firearm and Unlawful Trafficking of Firearms (federal)

As the government outlined in its sentencing memorandum for this offense, the defendant enabled criminal activity in Santa Rosa by providing loaded, untraceable assault rifles, to others in the

community. It is not hard to imagine the types of individuals buying these weapons—violent criminals and drug dealers. The offenses of conviction related to the defendant selling methamphetamine and numerous firearms to a confidential informant. *See* 11-CR-112 SI, ECF No. 15 at 2-6. The defendant also had five pounds of suspected marijuana and a loaded assault rifle, with the serial number scratched off, in his house and storage facility. As the government argued at the time, an armed drug dealer and gun trafficker is a danger to the community, particularly a drug dealer who is able to move large volumes of methamphetamine.

Judge Illston sentenced the defendant to 151 months in custody and three years of supervised release. The defendant commenced supervised release in November 2021. *See* 11-CR-112 SI, ECF, No. 68 at 68. The Court granted early termination of supervised release in June 2023, three months before the defendant was found with 13 firearms and ammunition concealed in his vehicle.

The defendant also has two arrests of concern: (1) an arrest for shooting at an inhabited dwelling and attempted murder in 2009; and (2) an arrest for felon in possession of a firearm in 2022 in LA. Pretrial's bail report does not list additional information about the 2009 offense; Pretrial is awaiting information from LA regarding the 2022 offense.

Judge Illston gave the defendant the benefit of the doubt. She took him at his word in April 2023 when he indicated that he intended to pursue a law-abiding life and expand his work in the trucking business. Gebrezghi abused that trust. Within three months of the termination, he had resumed his criminal activities—possessing and trafficking firearms and ammunition. He is a recidivist and danger to the community and must be detained. Defendant made this choice to return to dealing in firearms—he was not forced into this lifestyle. He could have chosen to do exactly what he told the Court he would do, work for his family trucking business, but instead he chose to amass and traffic in firearms with absolutely no regard to the danger this poses to others in the community.

### C. Gebrezghi Poses a Substantial Risk of Flight

Although Gebrezghi does appear to have family scattered around California, he does not appear to have a stable residence nor employment ties sufficient to ensure he does not flee. The pretrial report indicates the defendant resided with his sister in Rancho Cardova for only one month and he does not contribute to the rent. Prior to living with his sister, the defendant appears to have moved between a

halfway house, Sacramento, Santa Rosa, and LA. Indeed, the defendant's sister reported that, prior to living with her, the defendant was "back and forth" between Santa Rosa, Sacramento, and his significant other's residence in an unknown location. Unfortunately, the defendant's sister may not exert sufficient moral suasion over the defendant given that the car in which the defendant was trafficking firearms in 2023 was rented in her name. The defendant has two children, both of whom, however, reside with their respective mothers, not the defendant.

Perhaps more importantly, the defendant does not appear to have stable employment that could help ensure his presence in one location, and the information he provided to Pretrial about his supposed employment is inconsistent and suspect. The defendant reported to Pretrial that he works part time at a clothing company he owns called "You Don't Know Who I am Clothing". The government understands that there is no physical store front for this company and was also unable to find a website for this brand online where a customer could make purchases. As such, it is unclear whether this purported company even exists, and even if it does, how the defendant is generating income from this work. According to the Pretrial report, the defendant also reported the company is based in LA, however, the defendant was purportedly most recently residing with his sister in Rancho Cordova. Interestingly, the sister also reported information to Pretrial that was inconsistent with that provided by the defendant. She reported the brand was called "Gold Collar". The fact that the defendant's sister was also paying the rent and paying for groceries, further corroborates that the defendant has not been generating sufficient income from this clothing brand. Instead, it seems far more likely that the defendant has been generating income from illegal activities, namely his gun trafficking business. The defendant had over $16,000 in the car on the one occasion when he was stopped in Mississippi in 2023 with thirteen firearms, which is more than four times his reported monthly income to Pretrial.

In addition, Gebrezghi's motivation to flee in this case is significant. He has no ties to Mississippi, where the case is pending. The weight of the evidence is strong, as outlined above, and, perhaps most importantly, he is facing extremely high penalties if he ever faces justice in Mississippi. Given that he already received a 151 month sentence from Judge Illston, which did nothing to deter his criminal behavior, it is probable that a judge sentencing Gebrezghi for this new offense will find a sentence longer than 151 months necessary to provide just punishment and deterrence.

Finally, Gebrezghi has a history of failing to abide by conditions of release. As discussed above, his prior offenses were all committed while he was on some form of supervision. He also committed offenses while in prison. Given Gebrezghi's repeated criminal behavior, even when on some form of supervision, and the significant consequences he faces for the instant offense, Gebrezghi is unlikely to comply with requests to appear in Mississippi, nor comply with other conditions of pretrial release.

## IV. CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Pretrial Services Report, the Government submits that there are no conditions of release that would reasonably assure the safety of the community or Gebrezghi's appearance in Mississippi for the instant case. Failing to detain Gebrezghi will expose individuals in the community to danger and will likely result in him committing more crimes given the recidivist behavior he has already demonstrated.

DATED: February 26, 2025

Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney

_____*/s/ Kristina Green*______________
KRISTINA GREEN
Assistant United States Attorney